**Thomas R. PATTISON and the Aetna Casualty and Surety Co., Plaintiffs-Appellees,**

v.

**The STANDARD OIL COMPANY OF OHIO, Defendant-Appellant.**

**No. 17086.**

United States Court of Appeals Sixth Circuit.

April 10, 1967.

---

6. No agreements involving the defendants were executed with Ziegfeld and Goldwyn in respect to the "Whoopee" music.

William T. Smith, Cleveland, Ohio (H. Vincent E. Mitchell, Robert A. Richardson, McAfee, Hanning, Newcomer, Hazlett & Wheeler, Cleveland, Ohio, on the brief), for appellant.

William E. Pfau, Youngstown, Ohio (William E. Pfau, Jr., Pfau, Pfau & Comstock, Youngstown, Ohio, on the brief), for appellees.

Before WEICK, Chief Judge, and PHILLIPS and McCREE, Circuit Judges.

HARRY PHILLIPS, Circuit Judge.

This is an appeal from a verdict and judgment in favor of plaintiffs for personal injuries and property damages. The suit grew out of a motor vehicle accident involving an automobile owned and operated by plaintiff Pattison and a tractor-trailer truck owned by the defendant, both proceeding in the same direction on a four lane highway on a dark, rainy night.

Plaintiff,[1] while en route from Washington, D. C. to his home in Wisconsin, had stopped for the night at a motel near the scene of the accident. His wife's mother had died in Wisconsin. The wife had returned from Washington to Wisconsin by airplane and plaintiff and their two children were proceeding home by automobile. After registering at the motel and leaving his children in the motel room, plaintiff decided to buy some gasoline, intending to make an early start the following morning. A service station was located only a short distance from the motel and on the same side of the highway. In order to drive his automobile from the motel to the service station, it was necessary for plaintiff to cross two lanes of traffic, turn to the left into the four lane highway, proceed a short distance, then make another left turn into Calla Road, where the service station was located.

After plaintiff had entered the highway and before he had completed his left turn into Calla Road, his automobile was struck in the rear by defendant's truck.

The evidence is in conflict as to whether plaintiff, after leaving the motel, turned into the fourth (right hand) lane of the highway or the third lane. Plaintiff contends that he entered the third

---

lane and remained in that lane next to the center markers until the time of the accident. Defendant contends that plaintiff entered the fourth lane, then, without giving any signal, pulled to his left into the third lane at a time when the truck was only two or three feet behind the automobile and was turning into the inside lane for the purpose of passing plaintiff's automobile.

The evidence also is in conflict as to exactly where the accident occurred with relation to the intersection of the four lane highway with Calla Road. Plaintiff testified that he was some eighty to one hundred feet from the Calla Road intersection when the truck struck him. The truck driver said that plaintiff was "just about at the intersection with Calla Road" and in the act of turning left into the intersection at the moment of impact. The Deputy sheriff who investigated the accident testified that he found broken glass near the center of the four lane highway "two feet south of the crosswalk with Calla Road."

The principal question presented on this appeal is whether the district court erred in refusing to instruct the jury with regard to the turn signal requirements of § 4511.39, Ohio Revised Code, which provides as follows:

"No person shall turn a vehicle * * * from a direct course upon a highway until such person has exercised due care to ascertain that the movement can be made with reasonable safety to other users of the highway, and then only * * * after giving an appropriate signal in the event any traffic may be affected by such movement.

"A signal of intention to turn * * left shall be given in sufficient time in advance of the movement indicated to give ample warning to other users

of the highway who would be affected by such movement.

"No person shall stop or suddenly decrease the speed of a vehicle * * * without first giving an appropriate signal to the traffic immediately to the rear."

The turn signal requirements of this statute were specially pleaded by defendant as an affirmative defense.[2]

The truck driver testified that plaintiff gave no turn signal prior to the accident. Plaintiff testified that he intended to make a left turn into Calla Road but did not recall giving any signal, even after he had heard a warning horn signal from the truck behind him.

The district judge refused to charge the jury concerning the above-quoted turn signal requirements of the Ohio statute, but included the following on this subject in his instructions:

"Now in this regard, there are a few matters which I will withdraw from your consideration and require you to accept as facts. The first is—whether the plaintiff was signalling for a left turn onto Calla Road is immaterial to this case. Now, whether he was changing from one lane to another is material, and his signalling may have some effect there. But it was not raised in this case insofar as I can determine, that the plaintiff was negligently turning into Calla Road. The accident happened before he reached the place of turning. The defendant's theory or claim is that the plaintiff changed lanes and did so immediately in front of the defendant in such a fashion that the assured clear distance was cut down to a degree whereby the defendant could not reasonably bring his vehicle to a stop so as to avoid the collision. That is the gist and the substance of the defend-

---

2. Defendant's answer contains the following:

"Defendant * * * says for its affirmative defense that plaintiff directly contributed to cause the collision between his automobile and defendant's tractor-trailer truck by his negligence

* * * in making a left turn without exercising due care to ascertain that the movement could be made with reasonable safety to other users of the highway and without giving an appropriate signal."

ant's claim as to what the plaintiff did. There is no evidence introduced at the trial from which a finding could be made that the plaintiff on pulling out of the motel driveway onto Route 7 failed to yield the right of way to the defendant's truck. The evidence is that he had already made the turn or made the turn in sufficient time. So you will not consider whether the plaintiff was negligent in pulling out of the motel drive onto Route 7, nor will you consider whether he was negligently negotiating his turn onto Calla Road. He had not reached Calla Road. Well, I cannot say he had not reached that point, the evidence is in conflict. The defendant has introduced evidence placing the plaintiff— or showing that the automobile was at Calla Road. The plaintiff has introduced evidence that his automobile was considerably south of Calla Road."

In response to defendant's request that the foregoing portions of the charge be corrected, the district judge delivered the following additional charge to the jury:

"Now I also said something in connection with turn signals or the giving of appropriate signals when an automobile—when the operator of the automobile is going to turn his vehicle from a direct course on the highway, he should first ascertain that this movement can be made with safety to other users on the highway, and, then change his course only in the event that other traffic may not be affected by the movement. I gave you this instruction in connection with the claim of the defendant, who says that the plaintiff drove from one lane to another. Of course, if you believe the plaintiff remained on the inside lane, then this instruction has no applicability."

After beginning its deliberations, the jury returned to the courtroom and submitted certain questions to the district judge. The response of the district judge in part was as follows:

"It is the plaintiff's claim in this case that as he came out of the motel drive he drove across the two south bound lanes on Route 7, across the medial strip. That is the section—the narrow section which is only a few feet wide and containing what has been referred to as turtlebacks or buttons. The plaintiff says, in effect, that he came out of the motel drive, crossed the two south bound lanes towards the turnpike, crossed the buttons or turtlebacks, and turned left heading north. He claims he never went into the outside or most easterly lane for north bound traffic, that he remained—that he turned into and remained at all times in the inside lane or the most westerly lane for north bound traffic; that while he was in that lane proceeding at a reasonable rate of speed, he heard a horn blow behind him; that momentarily after that he was struck from behind.

"When he heard the horn blow he did not know what the signal meant so he simply stayed in his lane. That is what he says. He also says that he was not making, at that point, an immediate turn, he intended to turn in Calla Road but he had not reached Calla Road. Before he reached Calla Road he was struck from behind. Now that is what the plaintiff says. That is his claim.

"Now the defendant says that when the plaintiff came out of the motel driveway he did not go into the inside or most westerly lane for north bound traffic, that he went instead into the outside or most easterly lane for north bound traffic; that the defendant, seeing this, pulled into the inside lane or most westerly lane for north bound traffic to pass Mr. Pattison. He said he was going at forty-five or forty-seven miles per hour; that as he was overtaking the plaintiff at approximately Calla Road, the plaintiff suddenly, and without any warning or signal, changed lanes directly in front and cut down his assured clear distance so that he was unable, in the exercise of ordinary care, to bring his truck to a stop and to avoid the colli-

sion. That is the substance of the claims two parties have offered their evidence on.

" * * * [I]f you find that the plaintiff was in the outside lane and cut immediately in front of the truck, then you may find the plaintiff was negligent. If you find that the plaintiff was in the inside lane and the truck struck him from behind, that is as he proceeded down the inside lane from the motel, and the truck struck him from behind, then you may find that the defendant was negligent."

At this point in the proceedings defendant again asked, out of the presence of the jury, that the trial judge charge the jury with respect to § 4511.39 of the Ohio Revised Code, but the district judge refused to do so.

At the close of all the evidence defendant submitted its special request No. 3. Under this requested charge, the district judge would have quoted to the jury § 4511.39 of the Ohio Revised Code relating to turn requirements and then would have charged the jury as follows: "This Ohio Statute sets forth a rule of conduct which you may consider in determining whether plaintiff, Thomas R. Pattison, was negligent."

The district judge rejected defendant's special request No. 3 and refused to submit it to the jury.

We find that defendant's special request No. 3 correctly stated the statutory rule applicable to the facts of this case. Cothey v. Jones-Lemley Trucking Co., 176 Ohio St. 342, 199 N.E.2d 582; Van Jura v. Row, 175 Ohio St. 41, 191 N.E. 2d 536; Eisenhuth v. Moneyhon, 161 Ohio St. 367, 119 N.E.2d 440.

 Regardless of whether he was driving in the third lane of the highway, as claimed by him, or in the fourth (right hand) lane as claimed by defendant, the record shows without contradiction that plaintiff intended to make a left turn into Calla Road in order to purchase gasoline, and then return to his motel. This was the purpose of the mission in which he was engaged at the time of the accident.

As stated above, the evidence is in conflict as to how far he was from Calla Road at the time of the accident or whether he had begun his left turn toward Calla Road when the truck struck him. Under these circumstances, we hold that the district court erred in refusing to charge the jury concerning the turn requirements of § 4511.39, quoted above. It was a jury question as to whether plaintiff was required to give a left turn signal under the circumstances of this case and whether his failure to do so constituted contributory negligence proximately causing the accident. Eisenhuth v. Moneyhon, supra; Ruffo v. Randall, 72 Ohio App. 396, 52 N.E.2d 750.

Because of this error in the charge, we reverse and remand for a new trial. In view of this disposition of the appeal, it is not necessary to pass upon the other issues raised by appellant, except one issue which could arise on the new trial. We pass upon this question now for the assistance of the district court on the new trial.

 The testimony of deputy sheriff John T. Dellick, the investigating officer, as a witness for defendant was of vital importance, since he was the only witness other than plaintiff and defendant's truck driver who testified as to the facts surrounding the accident. This officer testified that the plaintiff stated that he had started to cross over toward the gas station when he heard the truck's warning horn; that he could not see in what direction the vehicle was coming from; that he started to cross over the center lane to go over to the gas station; that he was very upset and in a hurry; that "all he had on his mind was to get his gas and get back to Wisconsin;" and that "it was my fault, I was not thinking right."

In an attempt to undermine this damaging testimony by cross-examination of this officer, plaintiff's counsel brought out that the officer had inserted the words "no improper action" next to plaintiff's name on the accident report.

On rebuttal, counsel for defendant undertook to establish the intent of the

648

investigating officer in writing the words "no improper action" by plaintiff's name on the report, but the district court refused to permit him to do so. The following appears in the transcript at this point:

"Q. In your report you refer to Mr. Fender driving the Standard Oil truck, you refer to him as driver number two?

"A. Yes.

"Q. Do you have the same notation for driver number two as you have for driver number one, no improper action?

"A. Yes.

"Q. Will you tell us why you marked on your report—"No improper action." for driver number one, Mr. Pattison?

"Mr. Pfau: Objection.

"Court: Sustained.

"Mr. Smith: May I proffer the answer?

"Court: Come up here, I would like to hear the proffer.

"Mr. Smith: I would like to proffer the answer—'because Mr. Pattison had told me that his wife's mother had died, and I told him I would not add to his misery by citing him.' "

We hold that the failure of the district court to admit into evidence the explanation of the arresting officer constituted prejudicial error under these circumstances. This holding is in accord with the Ohio rule as stated in the second syllabus in Shellock v. Klempay, 167 Ohio St. 279, 148 N.E.2d 57, 75 A.L.R.2d 900, as follows:

"Where, on cross-examination, a witness is impeached by a showing of prior statements made by him in a written instrument apparently inconsistent with his statements on direct examination, reference to other statements in the same document used to impeach him is proper for the purpose of rehabilitation, where such other statements are consistent with the statements made on direct examination or are in explanation of such apparent inconsistency and do not serve to inject new issues into the case."

Reversed and remanded.